**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT G. WALSH,
Plaintiff-Appellant,

v.                                                    No. 96-1528

CIBA-GEIGY CORPORATION,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CA-94-634-5-F)

Submitted: August 12, 1997

Decided: September 2, 1997

Before WILKINSON, Chief Judge, and HALL and
MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Marvin Schiller, Raleigh, North Carolina, for Appellant. Martin N.
Erwin, SMITH, HELMS, MULLISS & MOORE, L.L.P., Greensboro,
North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Robert Walsh appeals from the district court's grant of a Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a). Walsh's action alleged that the Appellee CIBA-GEIGY Corporation, his former employer ("employer"), terminated him based on his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. He also brought claims of wrongful discharge and breach of contract under North Carolina law.

Walsh began working for employer as a draftsman at its New York facility in 1969. He left New York in October 1989 to take a new position as Manager of Engineering and Maintenance at the company's facility in North Carolina. Walsh alleges that prior to accepting the job, he sought and received assurances from Phil Young, the Site Director at the North Carolina facility, that if he transferred he would be permitted to keep his position until his planned retirement at age 65. Young left the company in May 1991, and was replaced by Dan Lehman.

In May 1993, Lehman asked Walsh to add the duties of Safety Manager to his existing responsibilities. Walsh responded that he was unqualified for the position. Although Lehman responded that the company would send him to school for any necessary training, Walsh still expressed no interest in the position. Around the end of June 1993, the company held two meetings at which it solicited volunteers from among Walsh and certain co-workers to assume the responsibilities of Site Safety Manager. By this time, the employee who formerly held the Safety Manager position had left the company.

On July 12, 1993, Lehman gave Walsh a memo from another company official which recommended that the duties of Safety Manager be assigned to Walsh. Walsh responded with a letter the next day stating again that he was unqualified for the position, and that the training he needed "would take too much time to accomplish and not be in the best interest of this unit." A couple of weeks later, Lehman told Walsh that the site safety position had been consolidated with another engineering position requiring a greater level of engineering expertise

2

than Walsh possessed, effectively eliminating Walsh's position. The new position was awarded to a forty-year old male who, unlike Walsh, was an engineer. At the time of his discharge, Walsh was 59 years of age.

On appeal, Walsh first alleges that the district court erred by relying on our decision in O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542 (4th Cir. 1995) (O'Connor I), in finding that his ADEA claim could not succeed as a matter of law. In O'Connor, we held that if the individual selected to replace a plaintiff was a member of the class protected by the statute, i.e., 40 or over, then the plaintiff could not establish a prima facie case of discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Id. at 546. Walsh correctly contends that the Supreme Court subsequently reversed this holding, finding that whether "one member of the protected class lost out to another member is irrelevant, so long as he lost out because of his age." O'Connor v. Consolidated Coin Caterers Corp., ___ U.S. ___, 116 S.Ct. 1307, 1310 (1996).

Our review, however, of the grant of a Rule 50 motion is de novo. Malone v. Microdyne Corp., 26 F.3d 471, 475 (4th Cir. 1994). Hence, we may properly assess in this case whether, even absent our holding in O'Connor I, the jury could have reached only one conclusion regarding Walsh's ADEA claim. See Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985). We agree with the employer that a reasonable jury could not have found establishment of age discrimination in this case.

A plaintiff can prove an ADEA violation either (1) by direct or indirect evidence relevant and probative to the issue, or (2) by means of the proof scheme used in McDonnell Douglas , as adapted to ADEA claims. See O'Connor I, 56 F.3d at 545-46. To establish a prima facie case of age discrimination under the McDonnell Douglas scheme, Walsh needed to prove that (1) he was a member of the protected age group (40 or over), (2) he was discharged or demoted, (3) at the time of his discharge or demotion, he was performing his job at a level that met his employer's legitimate expectations, and (4) after his discharge or demotion, he was replaced by someone of comparable qualifications, who was substantially younger than himself.

3

See Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996).*
In this case, Walsh effectively concedes that he could not establish the
third or fourth elements. There is no dispute that he was not qualified
to perform the safety or engineering aspects of the new position.
Moreover, the fourth element of the McDonnell Douglas scheme sur-
vives at least to the extent that the plaintiff must show that he was
replaced by someone of comparable qualifications. In this case, there
is no dispute that Walsh lacked the engineering qualifications of his
replacement. Accordingly, the record cannot support a finding of a
prima facie case of age discrimination under the McDonnell Douglas
scheme.

Nor does the record contain evidence, either direct or indirect,
which could establish age discrimination under ordinary principles of
proof. To establish an ADEA violation under the direct standard of
proof scheme, Walsh had to show that (1) he was an employee cov-
ered by the statute, (2) an employer covered by the statute took action
unfavorable to him, and (3) age was a determining factor in the action
in the sense that but for the employer's intent to discriminate on the
basis of age, he would not have suffered the adverse employment
action. See O'Connor I, 56 F.3d at 548. Where the relevant decision-
maker has hired or offered the plaintiff a promotion shortly before his
termination, a strong inference arises that discrimination was not a
factor motivating the discharge. See Mitchell v. Data Gen. Corp., 12
F.3d 1310, 1318 (4th Cir. 1993). The only evidence supportive of
Walsh's position is his testimony that during the last few months pre-
ceding his termination, Lehman asked him on several occasions when
he was planning to retire. As Walsh presented this evidence in isola-
tion, without demonstrating any nexus to his termination, we find that
the statements do not evince discriminatory intent. Id. at 549. More-
over, we note that Walsh's superiors offered him the training neces-
sary to retain his position before offering it to another. Accordingly,
we find that the district court properly granted judgment as a matter
of law on Walsh's ADEA claim.

_____
*Prior to the Supreme Court's decision in O'Connor, a plaintiff also
had to establish that following his discharge or demotion, he was
replaced by someone of comparable qualifications outside the protected
class. The Supreme Court's decision somewhat modifies this last require-
ment. See Burns, 96 F.3d at 731 n.1.

4

Walsh next challenges the district court's decision to grant employer judgment on his wrongful discharge claim. Walsh contends that his termination fits within the class of cases recognizing an exception to North Carolina's employment at-will doctrine in situations where an employee's termination is in contravention of an expressed public policy of the State. See Amos v. Oakdale Knitting Co., 416 S.E.2d 166, 167 (N.C. 1992). Specifically, Walsh asserts that his termination is inconsistent with the policy of State Occupational Safety and Health laws intended to promote workplace safety, because had he attempted to perform the job offered to him he would have endangered the safety of his co-workers and the public.

We need not address employer's argument that Walsh has reframed his public policy argument before this court to the point that it constitutes an argument initially raised on appeal. Instead, we find that the district court correctly determined that employer did not ask Walsh to do anything which would violate North Carolina's policies favoring workplace safety. The obvious purpose of the position the employer offered was to promote workplace safety. Moreover, Walsh admitted in his testimony that he could have performed the duties requested with training, and that such training was offered. The district court therefore properly granted judgment on the wrongful discharge claim.

Finally, we reject Walsh's position that Mr. Young's promise of a job until Walsh reached age 65 created an oral contract for a term of definite duration. First, under North Carolina law, promises of a permanent job do not create a contract for a definite period of time. See Nantz v. Employment Security Comm'n, 226 S.E.2d 340, 343 (N.C. 1976). Second, even if such a promise could otherwise create a contract, in this case there is insufficient consideration to support a contract. In North Carolina, where an employee forfeits his position in one city and moves to another city in order accept a job within the same company, the employee's actions provide insufficient consideration for a contract, and the employee remains an at-will employee. See Buffaloe v. United Carolina Bank, 366 S.E.2d 918, 920-21 (N.C. App. 1988). As no contract for a definite duration existed in this case, Walsh's claim of breach must fail.

Accordingly, the judgment order of the district court is affirmed. We dispense with oral argument because the facts and legal conten-

tions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

6