**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-1216**

---

MORELAND JOANNE DIAMOND,

                                    Plaintiff - Appellant,

        versus

BEA MAURER, INCORPORATED,

                                    Defendant - Appellee,

        and

BEA MAURER,

                                            Defendant.

---

Appeal from the United States District Court for the Western District of Virginia, at Lynchburg. Norman K. Moon, District Judge. (CA-03-43-6)

---

Argued: February 4, 2005              Decided: April 25, 2005

---

Before MOTZ, TRAXLER, and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** William Jeffrey Dinkin, DINKIN, PURNELL & JOHNSON, P.L.L.C., Richmond, Virginia, for Appellant. Frank Kenneth Friedman, WOODS ROGERS, P.L.C., Roanoke, Virginia, for Appellee. **ON BRIEF:** Jaime H. Blackmon, DINKIN, PURNELL & JOHNSON, P.L.L.C., Richmond, Virginia, for Appellant. Agnis C. Chakravorty, WOODS ROGERS, P.L.C., Roanoke, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Moreland J. Diamond brought this action, alleging that her former employer discharged her because of her race. The district court granted summary judgment to the employer. For the reasons set forth within, we affirm.

I.

On May 13, 2002, Diamond, an African-American woman, began work as a sewing machine operator at Bea Maurer, Inc. (BMI), which produces quick shelter tents for the Armed Services. Diamond received an above-average employee evaluation after thirty days. Three months later, although Diamond did not have any entitlement to sick leave, BMI permitted her to take an unpaid leave of absence for previously scheduled surgery. After a month's leave, Diamond returned to work at BMI on October 3, 2002. Upon her return, although not required to do so, BMI assigned Diamond light-duty work, paying her at the same rate of pay that she earned when she had worked without restrictions.

Soon after she returned to work, Diamond began to have clashes with BMI's owner, Bea Maurer. Diamond maintains that on November 8, 2002, after she and a white co-worker had attempted to get a flu shot while at work, Maurer reprimanded Diamond, but not the co-worker. When Diamond remonstrated, Maurer assertedly told Diamond that she "didn't like [Diamond's] attitude."

3

Diamond also asserts that at about the same time "Maurer began standing around with various Caucasian employees, watching Diamond work, and making comments about Diamond to BMI's supervisors in an attempt to influence their opinion of Diamond." Ultimately, according to Diamond, Maurer "approached [her] in a rage" on the plant floor, criticized Diamond for the way she "was acting," particularly her "strutt[ing] around." When Diamond maintained that she did not have an "attitude," Maurer assertedly became "outraged" and "went and wrote" a reprimand of Diamond. Diamond contends that BMI has treated no other employees in this manner.

On November 12, BMI supervisors attempted to give Diamond this reprimand, citing her "negative attitude," "poor work performance," and "disrespect[]" for Maurer. Although Diamond refused to sign the written reprimand, she acknowledged that BMI supervisors read it to her. The reprimand warned Diamond that "if improvement in attitude and work performance [is] not seen by the end of [the] week, results will be termination." A supervisor also specifically told Diamond that Maurer objected to Diamond's disruptive behavior, such as chewing gum and singing aloud on the plant floor while listening to music on headphones. On November 14, 2002, seven months after she began work, Diamond was fired.

Within six months, Diamond, acting pro se, filed this Title VII action, asserting that BMI had illegally fired her because of her race. In support of her claim, Diamond submitted a written

4

statement from a former BMI supervisor affirming that Diamond had performed her work adequately while under his supervision; a cassette and transcript of a taped conversation in which another former supervisor also indicated that Diamond had performed her work adequately; and a declaration from a former co-worker stating that BMI permitted other employees to wear headphones and chew gum. Diamond also submitted her own affidavit in which she attested inter alia that, during her employment at BMI, the company employed only one other person of color; the company permitted white employees to sing loudly at work; and Maurer made various statements assertedly indicating racial bias. The district court granted summary judgment to BMI, and Diamond appeals.[1]

## II.

A plaintiff can establish a Title VII violation in two ways: through "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue" or through the burden-shifting method of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999). No matter which method of proof is used, the ultimate question "is a straightforward one-- whether plaintiff[] successfully demonstrated that [she was] the

---

[1]We appointed counsel to represent Diamond on appeal and very much appreciate their excellent efforts on her behalf.

victim[] of . . . discrimination on the part of [her employer]." Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511 (4th Cir. 1994).  Diamond contends that she has produced enough evidence to withstand a motion for summary judgment using either method of proof.

A.

"To survive summary judgment on the basis of direct and indirect evidence, [the plaintiff] must produce evidence that clearly indicates a discriminatory attitude at the workplace and must illustrate a nexus between that negative attitude and the employment action." Brinkley, 180 F.3d at 608. Diamond unsuccessfully seeks to meet this burden by pointing to the small number of African-American employees at BMI; to instances in which BMI purportedly treated her more harshly than her white co-workers; and to allegedly racist statements made by Maurer.

Under Fourth Circuit precedent, a dearth of African-American employees, without evidence as to the number of qualified African-Americans in the "relevant labor pool," does not establish even a circumstantial "prima facie case of discrimination," let alone direct or indirect evidence of purposeful discrimination. Carter v. Ball, 33 F.3d 450, 456 (4th Cir. 1994).  Diamond offered no evidence as to the composition of the relevant labor pool. Moreover, BMI notes, without contradiction from Diamond, that it is

6

located in Rockbridge County, Virginia, where the population is only 3% African-American.  See Brief of Appellee at 9.

Nor do the incidents in which BMI allegedly treated Diamond differently than white coworkers -- the flu shot incident, Maurer's criticism of Diamond's attitude and performance, and Diamond's reprimand -- "clearly indicate[]" intentional discrimination leading to unlawful termination.  Brinkley, 180 F.3d at 608. Diamond has not demonstrated any nexus at all between the flu shot incident and her discharge.  As to the other occurrences, we recognize that Diamond argues that she did nothing different than other employees and so did not deserve any criticism or reprimand. BMI counters that although the company permitted all employees to listen to headphones and to chew gum, it permitted no employees to do so in the inappropriate manner assertedly employed by Diamond, i.e., swaying and singing so others could see and hear, and popping gum loudly.  The record, even entirely crediting Diamond's account, actually indicates that the two had a mutually testy relationship in which Diamond, by her own account, felt free to "question" Maurer's assertion of authority.  Moreover, Diamond has conceded that even after she was warned by a BMI supervisor that Maurer did not like the manner in which she sang and chewed gum, she continued to do so because no one had forbidden it.  BMI maintains that it discharged Diamond for this reason.  Diamond offers no suggestion

7

or evidence that a white employee, after a warning, continued the criticized activity and yet was not discharged.

When an employer gives a "non-discriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, so long as it truly was the reason for plaintiff's termination." Hawkins v. Pepsico, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (internal quotations marks and citation omitted). Like the plaintiff in Hawkins, Diamond "cannot show" that her employer's "stated reasons for terminating her were not the reasons for her discharge." Id. Indeed, the record here contains undisputed evidence that, as long as it believed she was performing well, her employer treated Diamond well, permitting her to be absent for a month after working for only five months and providing her light duty work on her return.

Diamond's objections to three statements made by Maurer -- one prior to Diamond's discharge, and two made after the discharge when representatives from the NAACP visited BMI -- also fail to provide direct or indirect evidence of discrimination "that bear directly on the contested employment decision." Brinkley, 180 F.3d at 607 (internal quotation marks and citation omitted). Specifically, Diamond points to a remark Maurer made about the fact that Diamond's son has the same last name as Diamond herself. She also cites Maurer's July 2003 statements to the NAACP representatives visiting the plant on Diamond's behalf that the only single

8

African-American woman employed at BMI "was not black, but a woman who happen[s] to be black," and that if a federal contract required BMI to hire a certain number of minorities, she would close her shop.

In order for derogatory remarks to be indicative of discrimination, the statements must not be isolated or ambiguous, and there must be a nexus between the statements and the challenged employment decision. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-49 (4th Cir. 1995), rev'd on other grounds 517 U.S. 308 (1996). Diamond demonstrates no nexus between any of these statements and her termination. Moreover, all three remarks are both ambiguous and isolated -- they simply do not provide evidence that "clearly indicates a discriminatory attitude at the workplace" with a "nexus" to the "employment action." Brinkley, 180 F.3d at 608.

Thus Diamond has failed to proffer direct or indirect evidence of purposeful racial discrimination.


B.

Alternatively, Diamond asserts that she has made out a prima facie case under the McDonnell Douglas framework. Specifically, she maintains that she has established: "(1) that she is a member of a protected class; (2) that she was qualified for her job, and her job performance was satisfactory; (3) that she was fired; and

9

(4) that other employees who are not members of the protected class were retained under apparently similar circumstances." Brief of Appellant at 20 (citing Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995)).

It is undisputed that Diamond has established the first and third elements. The district court, however, found that she failed to establish the second. Because we agree with the district court that Diamond has failed to proffer sufficient evidence to establish the second element of the prima facie case, we need not reach the question of the sufficiency of the proffered evidence as to the fourth element.

Diamond acknowledges that to make out the second element of the prima facie case, she must demonstrate that "at the time of the adverse employment action" she "was performing at a level that met her employer's legitimate job expectations." Brief of Appellant at 22 (quoting Brinkley, 180 F.3d at 607) (emphasis added by Diamond). She maintains that she has done so by offering evidence that "during her first five (5) months of employment she never received any reprimands or had any problems" and that her former supervisors at BMI indicated that they had not had problems with her attitude or job performance. Brief of Appellant at 22.

This evidence, even if fully credited, does not suffice to prove the second element of a prima facie case because acceptable

10

job performance in the past does not establish acceptable job performance at the time of the termination. See O'Connor, 56 F.3d at 547. Diamond received a satisfactory job evaluation one month after she was hired, and there is no evidence that she received any reprimand or negative reviews for the next three months. However, it is undisputed that BMI permitted her to be absent from September 2 through October 2, 2002, and she has offered no evidence, except her own self-serving affidavit,[2] that after she returned to work in October 2002, her job performance was satisfactory. Thus, Diamond simply has not demonstrated that her job performance at the time BMI discharged her -- in November 2002 -- met BMI's legitimate expectations. See id. (holding that a positive review in January was irrelevant to the determination of whether the employee was performing adequately when terminated in August); Anderson v. Stauffer Chem. Co., 965 F.3d 397, 401 (7th Cir. 1992) (stating that positive evaluation five months before termination was not determinative of the question of whether the employee was meeting expectations at the time of discharge).

Similarly, the statements Diamond proffered from her former supervisors did not state that she was performing satisfactorily at the time BMI discharged her. Indeed, the endorsement of one of

---

[2]"[I]n a wrongful discharge action, '[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'" Hawkins, 203 F.3d at 280 (quoting DeJarnette v. Corning Inc., 133 F.3d 293 (4th Cir. 1998).

11

these supervisors was less than wholehearted -- the supervisor noted merely that "most of the time" Diamond did what she was told to do without "having an attitude."

## III.

For all of these reasons, the judgment of the district court is

AFFIRMED.