Frederick C. FARMER, Plaintiff,

v.

SECRETARY OF COMMERCE, Ronald
H. Brown, in his official capacity as Sec-
retary of the United States Department
of Commerce, Defendant.

Civil No. 6:94CV00654.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Jan. 2, 1996.

Marvin Schiller, Raleigh, NC, for plaintiff.

Gill P. Beck, Office of U.S. Attorney, Greensboro, NC, for defendant.

## MEMORANDUM OPINION

BULLOCK, Chief Judge.

Plaintiff Frederick C. Farmer has filed a claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a, against his former employer. Defendant has moved for summary judgment which will be granted for the reasons set forth hereafter.

## FACTS

The following facts are established from the record. Where there are disputes, both parties' positions are given.

The United States and Foreign Commercial Service (US & FCS) is a division of the International Trade Administration (ITA), which, in turn, is a division of the Department of Commerce (Department). The US & FCS is dedicated to facilitating exports of American goods. In 1991, Plaintiff was a sixty-year-old Trade Specialist GS–13 at US & FCS' Greensboro District Office.

In 1990 and 1991, US & FCS was trying to redistribute its work force to function more efficiently. US & FCS hoped to reduce staff in "overcomplement" offices, which were relatively overstaffed given the export potential of their areas, and increase staff in "undercomplement" offices. US & FCS intended at the end of the process to have the same number of total employees as it had at the start. Franklin Foster, director of Program and Field Operations for US & FCS' Office of Domestic Operations, developed a staffing plan for the redistribution of personnel based on pre-existing analytical tools. He identified six to eight offices, including Greensboro, North Carolina, as "overcomplement," and five to seven offices as "undercomplement."

ITA's Office of Personnel suggested four possible methods of reducing an overcomplement office's size: (1) attrition; (2) voluntary reassignment; (3) directed reassignment; and (4) reduction in force (RIF). US & FCS decided to try these options in that order. Its efforts to reallocate by attrition failed, and in late 1990 it tried voluntary reassignment. No employees in "overcomplement" offices, including Greensboro, volunteered to relocate.

In 1991, US & FCS turned to directed reassignment. Foster and Daniel Sullivan, deputy assistant secretary, US & FCS Domestic Operations, prepared a list of proposed reassignments. They identified Shannon Neal, a twenty-seven-year-old Trade Specialist GS–12, for reassignment to San Francisco.

Neal had some computer expertise, and the level of his skills and extent of his computing duties have become important to this case. Neal served in early 1991 as Greensboro's regional automation coordinator, which meant that he was the person responsible over a multi-state region for implementing computer operations and helping US & FCS staff use the computers. Foster has testified that Neal was among the handful of best-trained US & FCS field computer personnel. Neal stopped serving in the capacity of regional automation coordinator when Greensboro lost its status as a regional headquarters. If Neal had been transferred to San Francisco, he would have served as regional automation coordinator there.

During 1991, Neal was beginning to focus on trade specialist functions rather than computer responsibilities. He began to pick up more trade specialist duties, and two other staff members became systems administrators for the Greensboro office's computers.[1] He still, however, helped his fellow staff members on the computer. It appears that it was the common practice of staff members to ask any other employees for assistance with computer operation, but the staff recognized that Neal had extensive computer knowledge and relied on him as a primary reference.[2]

Samuel Troy, director of the Greensboro District Office, balked at having Neal relocated. In a note to Foster, Troy requested that US & FCS not require Neal to move because he needed Neal "in order to maintain a productive office," because "[c]omputers are vital to our future." Pl.'s Ex. 7 at 2. Foster complied with Troy's wishes. Foster then told Troy that Troy could recommend for transfer only trade specialists with grades of GS–9 and above.

Troy recommended two alternatives for transfer. One was John Schmonsees, a forty-eight-year-old trade specialist. Schmonsees was recommended for any trade specialist openings that Foster wanted to fill. Troy's other recommendation was Plaintiff, who was recommended for the open branch manager position in Spokane, Washington.

Troy's motives for recommending Plaintiff are an issue in this case. Troy wrote to Foster that Plaintiff would be well suited for the job because he had served as acting director of the Greensboro office, and was thus "capable of acting independently." Troy has testified that he thought the move would be an excellent career opportunity for Plaintiff because the position offered autonomy and the chance for advancement.[3] Troy felt that Plaintiff was not only best suited to transfer, but also most likely to accept a transfer, although Troy admits that he did not think it likely that anyone would accept the reassignment.

Plaintiff offers mixed testimony about what could have motivated Troy. First, he indicates that Troy may have been jealous of the attention Plaintiff's work had received. Second, he offers contradictory theories as to whether Troy considered Plaintiff's age. On the one hand, he says that Troy knew his age, knew that he was nearing retirement, and hoped to force him out by transferring him. On the other hand, Plaintiff says that, at his age, he did not want to leave his family and home to move across the country, and that Troy should have considered this as an argument against recommending him for transfer, but Troy did not do so.[4]

1. While Neal lost many of his formal computer duties inside the Greensboro office, he still traveled extensively abroad training Department employees on computers. He also assisted in leading a training session in Greensboro in 1992.

2. It is Neal's testimony that he was the most knowledgeable computer operator in the Greensboro office, followed by Deborah Strader and Iris Connor (the new systems administrators), then followed by the other trade specialists, including Plaintiff. Although Connor was given a position as a systems administrator, she admits that she is "not computer-literate." Connor Dep. at 18. Plaintiff controverts testimony about Neal's superior expertise only by saying that one other employee, Bill Davis, was as knowledgeable about the computer as Neal. Davis's name, however, does not appear on a list of the office staff at the time of the directed reassignment.

3. A recent Spokane branch manager had been promoted and serves as director of the Dallas office.

4. Plaintiff felt that he could have explained these objections to Troy if he had asked Plaintiff about the reassignment. US & FCS, however, ordered Troy to proceed confidentially.

Foster decided that Plaintiff should be transferred. He asserts that he based his decision on two factors. First, Spokane is an important West Coast export center and Plaintiff had previous experience leading a trade mission to Japan, which is a crucial market for West Coast trade. In fact, the Department recently had awarded Plaintiff its Silver Medal for his contributions on the Japanese mission. Second, Plaintiff's work as acting director in Greensboro demonstrated his ability to lead an office. Foster recommended the move to Sullivan, who approved it and notified Plaintiff on April 25, 1991.[5]

Plaintiff objected to the transfer and went to Washington to meet with Foster and Sullivan. In the meeting, Plaintiff claims that Foster said that when the Spokane position opened he immediately thought of "old Fred Farmer." Whether Foster actually said this is disputed. While the Department was willing to hear Plaintiff's objections and alternatives, it is undisputed that Plaintiff was working subject to a "mobility clause," under which Defendant could relocate him for non-discriminatory reasons "based on the overall needs of the organization" and could subject him to adverse consequences if he refused to transfer. *See* Def.'s Ex. A; Schwab Aff. at 6. After this meeting, Plaintiff accepted the transfer, but then decided to retire instead of relocating.

Plaintiff maintains that the Spokane position was a dead-end job, and he was targeted for it because of his age. First, Plaintiff testified that a former Spokane branch manager told Plaintiff that the position would not require him to deal with the same level of industry executives as Plaintiff had worked with in Greensboro. Second, the Spokane office had no federal support staff; Plaintiff would have had only one assistant, a city employee.[6] Additionally, Plaintiff notes that the Spokane office was closed soon after he

turned down the position. (Defendant maintains that the office closed precisely because Plaintiff refused to move.) Finally, Plaintiff maintains that because the primary export industry in Spokane's area, timber, differs from that in Greensboro's area, furniture, he was ill-equipped to handle the task and that it was wrong to select him for reassignment.

Plaintiff also asserts that US & FCS should have employed federal RIF standards in deciding whom to relocate. The RIF standards, 5 C.F.R. §§ 351.201–.902 (1995), give preference to senior employees and veterans. Indisputably, Plaintiff would have had preference over Neal under the RIF standards. Plaintiff does not allege that any statute or regulation required US & FCS to employ the RIF standards for this action; instead, he maintains that, through a memorandum, ITA's Office of Personnel required US & FCS to apply the RIF standards in making directed reassignments.

## DISCUSSION

In examining the motion for summary judgment, the court must decide whether Defendant has demonstrated "that there is no genuine issue as to any material fact and that [Defendant] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering the evidence, all reasonable inferences are to be drawn in Plaintiff's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512. Plaintiff cannot survive summary judgment "through mere speculation or the building of one inference upon another." *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 545 (4th Cir.) (quoting

---

**5.** Foster's uncontradicted testimony is that US & FCS could not have easily reassigned Schmonsees to Spokane because he was one grade level below the branch manager position. Before transferring him, US & FCS would have had to open the Spokane position for competition, and there would have been no guarantee that a staff member from an "overcomplement" office would have received the position. Also,

Schmonsees lacked the computer skills necessary for the position Neal would have taken in San Francisco.

**6.** Plaintiff complained that he "basically was going to be standing in front of the computer and punching keys and things like that." Pl.'s Dep. at 51.

*Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)), *cert. granted,* — U.S. —, 116 S.Ct. 472, 133 L.Ed.2d 401 (1995).

The ADEA contains a separate provision, 29 U.S.C. § 633a, that applies to the federal government. Section 633a prohibits the government from discriminating based on age in any personnel actions. *See* 29 U.S.C. § 633a(a).[7] This section applies to action taken by the Department. *Id.*[8]

■■■ To establish his claim, Plaintiff must show that " 'but for the employer's motive to discriminate against [him] on the basis of age,' the discriminatory action would not have occurred." *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir.1995) (quoting *EEOC v. Clay Printing Co.*, 955 F.2d 936, 940 (4th Cir.1992)). *See Fuller v. Phipps*, 67 F.3d 1137, 1144 (4th Cir.1995). Put another way, Plaintiff must show that age was "a determining factor" in Defendant's adverse employment decision. *See id.* (equating the two phrasings of the test). Defendant is entitled to summary judgment if Plaintiff fails to establish a *prima facie* case of discrimination or fails to raise a genuine factual dispute regarding the employer's proffered reasons for the alleged discriminatory act. *Henson,* 61 F.3d at 275.

A plaintiff can establish a *prima facie* case of age discrimination in two ways. The first method is by ordinary standards of proof with direct and indirect evidence. *O'Connor,*

56 F.3d at 545. Plaintiff has not offered sufficient evidence to establish a *prima facie* case by this method.

■■■ A plaintiff alternatively can establish a *prima facie* case through the indirect burden-shifting method of proof developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Henson,* 61 F.3d at 274 (applying *McDonnell Douglas* presumption scheme in ADEA case). Plaintiff focuses on this method. To establish a *prima facie* case, Plaintiff must prove that: (1) He is a member of the protected class, *i.e.*, at least forty years old; (2) he performed his job satisfactorily; (3) he suffered a materially adverse employment action in the form of a transfer; and (4) Defendant treated others outside the protected class more favorably than Plaintiff. *See Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 134 (7th Cir.1993). Defendant concedes that Plaintiff can establish a *prima facie* case, so the court will proceed to the next steps of the analysis.[9]

■■■ Once Plaintiff has established a *prima facie* case, an inference of discrimination arises, and the burden of production shifts to Defendant to offer legitimate nondiscriminatory explanations for the allegedly discriminatory acts. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Henson,* 61 F.3d at 274. "The employer is not re-

---

7. This section provides that no other provisions of the ADEA (except the age limit listed at 29 U.S.C. § 631(b)) apply to suits against the federal government. 29 U.S.C. § 633a(f). One might argue that because there are textual differences between the substantive provisions in Section 633a(a) and 29 U.S.C. § 623(a), the substantive protections accorded to employees of the federal government and private employers differ. Courts, however, have without discussion of the differences applied the same substantive law to cases against both private employers and the federal government. *See, e.g., Proud v. Stone,* 945 F.2d 796, 797–98 (4th Cir.1991); *Yudovich v. Stone,* 839 F.Supp. 382, 392 (E.D.Va.1993). In ruling on this motion, the court will apply the same law that it would apply in deciding a case against a private employer.

8. Defendant concedes that Plaintiff exhausted the administrative remedies that are necessary preconditions to a suit against the Department.

9. Perhaps Defendant was too quick to concede. Three of the requirements for a *prima facie* case are clearly met: Plaintiff unquestionably was within the protected class and performing well, and Defendant ordered him to transfer instead of Neal, who was twenty-seven years old. However, a potential issue remains whether the reassignment was a materially adverse employment action. Courts often grapple with what constitutes an adverse employment action when an employee is transferred without a reduction in title, pay, or benefits. *See, e.g., Bradford v. Norfolk S. Corp.,* 54 F.3d 1412, 1420–21 (8th Cir. 1995); *Torre v. Casio, Inc.,* 42 F.3d 825, 831 n. 7 (3d Cir.1994). Defendant has a colorable argument that no adverse action took place because in the reassignment Plaintiff would have kept his same grade, salary, and benefits, and, in fact, may have moved to a better job. Defendant has not made that argument, however, and the court will not raise it *sua sponte* because the pretext analysis is dispositive.

quired to prove the absence of a discriminatory motive because the burden is one of production, not persuasion." *Henson*, 61 F.3d at 274–75 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 511, 113 S.Ct. 2742, 2747, 2749, 125 L.Ed.2d 407 (1993)). Once the employer meets its burden by producing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action, the *McDonnell Douglas* presumption is no longer relevant, and the plaintiff bears the burden of persuasion to show by a preponderance of the evidence that the proffered reason was not the true reason for the employment decision *and* that Plaintiff has been the victim of intentional discrimination. *Hicks*, 509 U.S. at 511, 516–17, 113 S.Ct. at 2749, 2752.

■ At the summary judgment stage, however, it is sufficient to avoid summary judgment for the plaintiff to show that the employer's explanations are pretextual or that a genuine factual dispute exists concerning Defendant's proffered reasons. *Henson*, 61 F.3d at 274–75; *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir.1993). By "pretext," the plaintiff must show more than that the defendant's reasons are mistaken or not well thought out. *See Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995) (plaintiff must show defendant is lying). Employers retain the right to make business decisions, even wrong or stupid ones, so long as they do not violate the law. *Henson*, 61 F.3d at 277. Through all of this complex scheme, the court has one simple objective: to find whether there is any evidence of a stated purpose to discriminate of sufficient probative force to reflect at least a genuine issue of material fact. *Id.* at 275.

■ Defendant offers legitimate reasons for ordering Plaintiff to transfer to Spokane. The court will analyze those reasons in stages because US & FCS did not abruptly resolve to move Plaintiff to Spokane. The court can quickly handle many of these steps. First, Defendant demonstrates the legitimacy of US & FCS's decision to institute a policy of shifting employees from "overcom-

plement," or relatively overstaffed, offices. Likewise, US & FCS amply documents its determination that Greensboro was one of the "overcomplement" offices. Also, Defendant has shown that other methods of staff reduction had failed, and it was forced to resort to directed reassignment. Plaintiff does not challenge any of these justifications. Thus Defendant has offered unassailed nondiscriminatory reasons for at least its decision to direct the reassignment of one employee from Greensboro.

■ Plaintiff contends that, once US & FCS decided to transfer one Greensboro staff member, it picked him instead of Neal because of his age.[10] Defendant, however, offers substantial evidence of its legitimate and nondiscriminatory reasons for deciding to transfer Plaintiff.

First, Defendant adequately justifies its decision not to transfer Neal. Troy believed that Neal was an essential employee because he was the only Greensboro employee with extensive computer experience. Neal was among the Department's best-trained computer operators. He had previously served as the regional automation coordinator in Greensboro and, in that position, had been responsible for training employees in several states and in foreign countries. He served as a frequent computing resource for other employees in the Greensboro office.

Plaintiff tries to show that this justification was merely a pretext for keeping the office's youngest employee. He says Neal stopped serving as regional automation coordinator in 1991, and was no longer needed to implement computer systems and to lead training sessions. He points out that two other employees were assigned to be system administrators. He says Neal's official duties were shifted so that Neal was working solely as a trade specialist. Finally, he says Neal was often out of the office, so that others had less access to him as a computing resource.

All of Plaintiff's factual assertions are uncontradicted. However, Plaintiff merely shows that Neal's computing expertise was

---

**10.** A similar argument could be made by any one of the five employees GS–9 and above if *anyone* other than Neal had been transferred, because their ages ranged from 45 to 64.

less important than it once had been, not that it was unimportant to the future of the office. Plaintiff, in effect, questions Troy's business judgment in view of Neal's lessening involvement with computers; however, this is not the genuine issue of material fact that he must create to survive summary judgment. *See Russell,* 51 F.3d at 68. Plaintiff must create an issue as to Troy's honesty; he must produce some evidence that Troy's testimony about Neal's computer work being the real reason that Troy stopped his transfer was not credible. Plaintiff has not offered evidence sufficient to create a genuine question that Troy's stated reason was a pretext. *See Cherchi v. Mobil Oil Corp.,* 693 F.Supp. 156, 164–65 (D.N.J.) (holding that it is not enough for plaintiff to suggest that proffered reasons are not sufficiently compelling; instead, plaintiff must suggest that they were false), *aff'd,* 865 F.2d 249 (3d Cir.1988).

Plaintiff still could possibly survive summary judgment if he could show that, once US & FCS decided not to transfer Neal, its decision to select Plaintiff over another employee was a pretext for age discrimination.[11] Plaintiff has not done so.

Defendant proffers legitimate reasons for deciding to transfer Plaintiff instead of another employee. Troy contends that he recommended Plaintiff for three reasons: (1) Plaintiff was capable of acting independently; (2) the position was an opportunity to advance; and (3) Plaintiff was the Greensboro employee most likely to see a transfer as advantageous. Foster says that he accepted the recommendation because, first, he thought that Plaintiff was well suited for the position because of his experience with Japanese trade, and, second, he thought that Plaintiff's work as acting director in Greensboro had prepared him to lead an office.

Plaintiff offers a number of reasons that Defendant's justifications are pretextual. Plaintiff's arguments fail to recognize that employers must have "the latitude and autonomy to make business decisions, including workplace reorganization," without being second-guessed. *Henson,* 61 F.3d at 277. Plaintiff cannot create an ADEA claim by merely disagreeing with Defendant's judgment or complaining about the way in which Defendant carried out the reassignment.

Many of Plaintiff's complaints are merely disagreements with either the decision or the decision-making process; thus, they do not create a genuine issue of pretext. For example, Plaintiff complains that he was actually ill suited for the Spokane position because he knew little about timber, which apparently is not a major industry in and around Greensboro. However, the court will not question the Department's judgment about whether Plaintiff's expertise was suited for the position relative to other US & FCS employees. *See Douglas v. PHH FleetAmerica Corp.,* 832 F.Supp. 1002, 1009–10 (D.Md.1993). *See also Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980) (holding that it is defendant's perception of plaintiff's skills that matters, not plaintiff's self-perception). For a second example, Plaintiff complains that he was not consulted before the transfer.[12] Again, this amounts to simply a disagreement with Defendant's method of doing business.

Other of Plaintiff's arguments miss the mark because the ADEA cannot be looked upon as an affirmative action program. *See Henson,* 61 F.3d at 277 (noting that company is not required to terminate younger employees to retain older ones). Plaintiff believes that because of his long ties with the community, his many descendants in the area, and

---

**11.** The Supreme Court has granted *certiorari* in *O'Connor v. Consolidated Coin Caterers Corp.,* 56 F.3d 542 (4th Cir.1995), in which it will consider whether the ADEA protects older workers from discrimination in favor of younger employees who are also over forty; *e.g.,* whether a 60–year-old has an ADEA claim when he is transferred instead of a 45–year-old. —— U.S. ——, 116 S.Ct. 472, 133 L.Ed.2d 401. This becomes important here because all of the trade specialists GS–9 and above, except Neal, were over forty.

**12.** Plaintiff argues that Troy's failure to consult him is probative because Troy consulted Neal about whether Neal wanted to transfer to Atlanta to serve as regional automation coordinator. However, it is apparent from Neal's deposition that Troy's consultation with Neal occurred when the regional headquarters shifted from Greensboro to Atlanta, not when Troy was considering these directed reassignments. Neal Dep. at 20–21. There is no relevance in how Troy handled a possible voluntary reassignment in a different context.

his ill wife, he should not have been moved from Greensboro. While Plaintiff's argument has some emotional appeal, in essence he argues that Troy should have considered qualities that are proxies for his age and that those qualities should have counted in his favor. Unfortunately for Plaintiff, this is not the law.

Additionally, Plaintiff testified that he did not consider the move an opportunity at his age, although it might have been when he was forty. He testified, "I felt that they were shortsighted by forcing a man my age into a slot when they had a [younger] person close by." Pl.'s Dep. at 31. This, of course, is the heart of Plaintiff's argument: because of his age, proximity to retirement, and personal situation, Plaintiff should not have been transferred. This is not what the ADEA requires, however, especially when an employee understands that a job may require directed reassignment.

 Plaintiff does, however, make a pair of contentions that are arguably relevant to an ADEA claim, but do not help him survive summary judgment in this case. First, he asserts that Foster said that when the Spokane position became available he immediately thought of "old Fred Farmer." [13] Isolated and ambiguous references to age cannot support an ADEA claim. *O'Connor*, 56 F.3d at 548–49. The "old Fred Farmer" statement ultimately is unhelpful because it is ambiguous, and thus not probative of discriminatory intent. *See Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1026 (6th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 175, 126 L.Ed.2d 135 (1993). *See also O'Connor*, 56 F.3d at 549 (holding that humorous comment was innocuous, not probative); *Lindsey v. Baxter Healthcare Corp.*, 962 F.2d 586, 588 (7th Cir.) ("No weight can be attached to an overheard comment that [the employer] does not like to promote 'good old boys,' since any competent user of the English (or rather the American) language knows that to be a good old boy one need not be old, or for that matter good."), *cert. denied,* 506 U.S. 967, 113 S.Ct. 442, 121 L.Ed.2d 361 (1992).

Finally, Plaintiff argues that US & FCS should have applied the federal RIF standards to determine whom it would reassign. Under the RIF rules, 5 C.F.R. §§ 351.201–.902, Neal (and other Greensboro employees) would have been forced out before Plaintiff. Plaintiff claims that the RIF standards were required for these directed reassignments, not by statute or regulation, but by a memorandum from ITA's Office of Personnel. He argues that US & FCS disregarded the memorandum and refused to apply the RIF criteria in order to discriminate against him.

Plaintiff has given the memorandum a more narrow reading than is warranted. ITA merely suggested that US & FCS might use the RIF standards as one possibility or alternative for prioritizing staff members for directed reassignment. The memorandum gives the RIF standards as an example of a method of prioritizing. James King, the ITA personnel officer who wrote the memorandum, testified that he simply suggested that the US & FCS might follow the RIF criteria, but that US & FCS was not required to do so. The plain reading of the memorandum confirms King's statement; therefore, the memorandum does not create a genuine issue of material fact concerning age discrimination against Plaintiff.

## CONCLUSION

In summary, there is insufficient evidence to raise a genuine issue that any of Defendant's employees have been untruthful about the reasons they selected Plaintiff for transfer, and the reasons given provide a nondiscriminatory basis for the transfer of Plaintiff. Therefore, summary judgment will be granted for Defendant.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### *ORDER and JUDGMENT*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

---

13. Defendant has filed a motion to strike in regard to this alleged statement, contending Plaintiff does not establish that Foster said it, that it is irrelevant, and that it is prejudicial. The court will deny Defendant's motion.

IT IS ORDERED AND ADJUDGED that Defendant's motion for summary judgment be, and the same hereby is, **GRANTED,** and this action is **DISMISSED** with prejudice.

IT IS FURTHER ORDERED that Defendant's motion to strike is **DENIED.**

IT IS FURTHER ORDERED that each party shall bear its own costs.