Brenda SWAIM, Plaintiff,

v.

**WESTCHESTER ACADEMY, INC.,**
**Peter Cowen, and Harry Lejda,**
**Defendants.**

**No. 1:01CV486.**

United States District Court,
M.D. North Carolina.

June 21, 2002.

---

Mark Floyd Reynolds, II, High Point, NC, for Plaintiff.

Allan R. Gitter, Oliver M. Read, IV, Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, for Defendants.

## MEMORANDUM OPINION

OSTEEN, District Judge.

Plaintiff Brenda Swaim filed this action against her employer, Westchester Academy, Inc. ("Westchester"), and two Westchester administrators, Headmaster Peter Cowen ("Cowen") and Assistant Headmaster for Business Affairs Harry Lejda ("Lejda"). Plaintiff, who works at Westchester as a receptionist and transportation director, asserts claims for age and sex discrimination, breach of contract, tortious interference with contract, intentional infliction of emotional distress, and punitive damages.

This case is now before the court on Defendants' motion for summary judgment, as well as Defendants' motion to dismiss Plaintiff's state law claims against all defendants and Plaintiff's federal law claims against the individual defendants. reasons set forth herein, will grant Defendants' motion to dismiss the ADEA and Title VII claims against the individual defendants, the claim for tortious interference against Westchester, and the claims for intentional infliction of emotional distress. Additionally, the court will grant Defendants' motion for summary judgment with regard to Plaintiff's ADEA and Title VII claims against Westchester, the breach of contract claims, and the tortious interference claims against the individual defendants. All remaining claims will be dismissed.

## I. FACTUAL BACKGROUND

Westchester is a private, coeducational high school located in High Point, North

Carolina. Plaintiff, age 57, was originally hired as a bus driver and has worked at Westchester for approximately 34 years. She currently serves as lower school receptionist and director of transportation.

According to Plaintiff, at some point in 1998, Headmaster Peter Cowen attempted to change Plaintiff's status from that of a year-round employee to that of a nine-month employee.[1] Plaintiff complained about this proposed change to the Board of Directors, which determined that Plaintiff should continue as a year-round employee.

In July 2000, Westchester hired Harry Lejda as Assistant Headmaster for Business Affairs and instructed Plaintiff to report to Lejda. According to Plaintiff, Lejda immediately began to act in a confrontational and harassing manner toward her. Lejda required Plaintiff to meet with him every Monday morning in his office to discuss her work. During these meetings, Lejda criticized Plaintiff's work and at times told Plaintiff she was incompetent and that he had no confidence in her work. Moreover, Lejda often kept his door open, so that the two were within earshot of Lejda's secretary. At other times, Lejda criticized Plaintiff's performance in the hallway, the lounge, or other areas where other staff members could hear him.

On one occasion in late August 2000, Plaintiff was late to work after baby-sitting for one of the other bus drivers who had a childcare emergency and would not have been able to drive her route without Plaintiff's assistance. Plaintiff had left home in haste early that morning to pick up the child and needed to return home before work to change into her normal work attire. When Lejda arrived at school that morning and realized Plaintiff was not yet at her desk, he called her at home and demanded that she return as quickly as possible. Despite Plaintiff's explanation of the emergency, Lejda told Plaintiff she was required to be at work at 8:00, and that she was never again to leave work without telling Lejda first. Plaintiff was so upset by this incident and her ongoing struggles with Lejda that she went to see her doctor later that day, who prescribed an antidepressant and signed a note approving a three-week sick leave. Plaintiff was on sick leave from late August to mid-September 2000. During this time, Lejda called Plaintiff at home on several occasions regarding school matters, prompting Plaintiff to install caller-ID on her telephone so that she did not have to answer Lejda's calls.

For several months following Plaintiff's return from sick leave, Plaintiff and Lejda engaged in a volley of contentious correspondence. In September 2000, Plaintiff sent Lejda a strongly-worded letter expressing her intent to file charges of discrimination against Westchester. Lejda in turn sent Plaintiff a series of memos questioning her handling of licensing and registration of school vehicles, some of which were displaying incorrect and/or expired tags. Plaintiff responded with memos disclaiming responsibility for these errors. Lejda responded by reiterating that the problem was Plaintiff's responsibility.

In October 2000, Plaintiff returned to her office one day after a break to discover Lejda "rifling" through the filing cabinet behind her desk. Plaintiff, who had personal items in the filing cabinet, sent Lejda a memo the next day instructing Lejda not to enter Plaintiff's filing cabinet in the future without her express permission.

---

1. All Westchester employees work either a 12–month schedule or a 10–month schedule (with two months off during the summer). Most faculty members work the 10–month schedule, along with staff members whose services are not needed when school is not in session. (Lejda Aff. ¶¶ 3–4.)

A few days later, Plaintiff received a job description from Lejda detailing her duties as receptionist and director of transportation. The job description contained duties that Plaintiff believed had not previously been her responsibility. Lejda also sent Plaintiff a memo criticizing Plaintiff's handling of bus ridership information and giving Plaintiff additional duties in this area.

On October 30, 2000, Plaintiff received another memo in which Lejda criticized Plaintiff's job performance with regard to transportation matters and threatened to closely monitor Plaintiff's work to ensure the safety of students and compliance with the law. Plaintiff responded with another memo stating that Lejda's allegations were untrue and that his mistreatment of Plaintiff was being noticed by others.

In early January 2001, Plaintiff sparred with Lejda over the proposed termination of one of the bus drivers who had been using her bus for personal errands in violation of school policy. Lejda disagreed with Plaintiff's proposal that this employee be fired, and no action was taken. Later, the employee accused Plaintiff in front of other Westchester staff members of trying to get her fired. Plaintiff had not notified this employee of her intent to terminate her. Inferring that Lejda had disclosed that fact, Plaintiff sent him a memo of protest.

On January 5, 2001, Plaintiff filed a charge of discrimination with the EEOC, alleging discrimination on the basis of sex and age and in retaliation for complaining about her treatment. The EEOC declined to pursue the matter and issued Plaintiff a right-to-sue letter on February 28, 2001. Plaintiff noted that shortly after she filed her EEOC charge, day to day transporta-

tion-related inquiries from parents and repairmen were no longer referred to her.

In early February 2001, Plaintiff received a memo from Lejda criticizing the fact that Plaintiff allegedly had been playing a computer game during a break. Lejda informed Plaintiff that she was setting a bad example for other employees and students and that if she did not have enough receptionist work to keep her busy that he would rethink the need for her position. Plaintiff responded with a memo claiming that she had been playing the computer game to improve her dexterity with the mouse pursuant to an assignment from the computer instructor.

On March 14, 2001, Plaintiff received a contract signed by Headmaster Cowen offering her employment for 10 months for the 2001–2002 school year. The contract also offered Plaintiff a reduced annual salary of $27,920.[2] Plaintiff was the only 12–month employee to receive a 10–month contract that spring.[3] Plaintiff complained of this action to both Lejda and Cowen.

Plaintiff and Lejda continued to exchange other contentious memos regarding bus routes, related transportation matters, and Plaintiff's performance after Plaintiff returned to work for the beginning of the fall 2001 school term.

## II. DISCUSSION

### A. Standard of Review

When evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must consider the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations. *See Buser v. Southern Food Serv., Inc.,* 73

---

**2.** This amount represents Plaintiff's original annual salary of $33,500 reduced by two months' salary, or one-sixth.

**3.** The vast majority of Westchester employees, however, including all of the full-time teachers, were already 10–month employees. (Lejda Aff. ¶¶ 3–4.)

F.Supp.2d 556, 559 (M.D.N.C.1999). The motion should be granted only when " 'it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.' " *See Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989) (quoting *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir.1969)).

A motion for summary judgment should be granted when the pleadings and other evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. Age Discrimination

█ Plaintiff alleges that Defendants' misconduct violated the Age Discrimination in Employment Act ("ADEA"). *See* 29 U.S.C. § 623(a). Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Plaintiff cites misconduct by all three defendants in her age discrimination claim. However, under the ADEA, it is employers—not supervisors—who are subject to liability. *See id.; see also Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510–11 (4th Cir.1994). The court, therefore, will grant Defendants' motion to dismiss Plaintiff's ADEA claims against Defendants Cowen and Lejda.

A plaintiff may establish an ADEA claim in one of two ways. First, the plaintiff may present direct evidence that is sufficiently probative to determine that the defendant discriminated against the plaintiff on the basis of age. *See Equal Employment Opportunity Comm'n v. Clay Printing Co.*, 955 F.2d 936, 940 (4th Cir. 1992). Alternatively, if direct evidence is not available, the plaintiff may resort to the *McDonnell Douglas* burden-shifting scheme as adapted for use in ADEA cases. *See id.; see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this proof scheme, the plaintiff first must establish the elements of a prima facie case of age discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000). The burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for its actions against the plaintiff. *See id.* At this point, the presumption of discrimination "drops out of the picture," and the plaintiff must establish by a preponderance of the evidence that the defendant's proffered reasons were pretextual and the plaintiff was indeed the victim of intentional discrimination. *See id.*, 530 U.S. at 143, 120 S.Ct. at 2106.

To establish a prima facie case of age discrimination under the circumstances of this case, Plaintiff must produce evidence that 1) she is a member of the protected class, *i.e.*, over the age of 40, *see* 29 U.S.C. § 631(a); 2) she performed her job in a satisfactory manner; 3) she was subjected to a materially adverse employment action; and 4) her employer treated others outside the protected class more favorably than Plaintiff. *See Farmer v. Secretary of Commerce*, 923 F.Supp. 770, 774 (M.D.N.C.1996). Plaintiff, at age 57, clearly meets the first requirement, and her 10–month renewal contract at a reduced sala-

ry demonstrates the third. Plaintiff's evidence that she was performing her duties at Westchester in a satisfactory manner, however, is comprised solely of her own assertions. Defendants, on the other hand, have submitted numerous memos indicating at the very least that Plaintiff's supervisor believed her performance to be unsatisfactory.

As to the fourth element of the prima facie case, that Defendants treated others outside the protected class more favorably than Plaintiff, Plaintiff has failed to present any evidence beyond her own allegation that no one else was treated as she was by Lejda. Plaintiff asserts that no other 12–month employee was given a 10–month contract in the spring of 2001; however, Defendants have produced evidence that the vast majority of Westchester's employees were already on 10–month contracts, including the only other receptionist.

■ Despite these weaknesses in Plaintiff's prima facie case, the court will assume for present purposes that Plaintiff has met her burden under the *McDonnell Douglas* framework. Having so found, the court then must evaluate whether Defendants have produced a legitimate, non-discriminatory reason for their actions. *See Reeves*, 530 U.S. at 142, 120 S.Ct. at 2106. In this regard, Defendants submit that Plaintiff was offered a 10–month contract in March 2001 because her services as the lower school receptionist and transportation director were not needed during the summer months when school was not in session and the school buses were idle. Defendants have characterized this move as a business decision, explaining that while Plaintiff had in the past used the summer months to order maintenance on the bus fleet, these tasks could be completed the week before school started in the fall. Defendants have submitted evidence that the only other receptionist at West-

chester also is on a 10–month contract, along with the vast majority of staff members whose services are most needed when school is in session.

The court finds this evidence sufficient to meet the Defendants' burden of producing legitimate, non-discriminatory reasons for offering Plaintiff a 10–month contract in lieu of a year-round contract. Plaintiff, moreover, has produced no evidence suggesting that Defendants' reasons are pretextual. *See id.*, 530 U.S. at 143, 120 S.Ct. at 2106. Therefore, the court finds that Plaintiff has failed to establish a case of age discrimination under the ADEA and will grant Defendants' motion for summary judgment on this claim.

### C. Title VII—Sex Discrimination

Plaintiff also claims that Defendants' alleged mistreatment of her was precipitated by her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

■ As with her ADEA claim, Plaintiff has sued both Westchester and the individual defendants for Title VII violations. Under the remedial scheme established by Title VII, however, supervisors are not subject to individual liability. *See Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir.1998) (noting that Congress only intended employers, not supervisors, to be liable under Title VII). Therefore, Defendants' motion to dismiss the claims against the individual defendants, Cowen and Lejda, will be granted.

As with an ADEA claim, a plaintiff may proceed in two ways to establish a Title VII claim. First, using ordinary principles of proof, the plaintiff may present " 'direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force' " to survive summary judgment. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir.

1999) (quoting *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir.1988)). Alternatively, in the absence of such evidence, the plaintiff may proceed using the *McDonnell Douglas* burden-shifting scheme described in part II(B), *supra. See id.*

In order to establish a prima facie case of discrimination on the basis of sex under the *McDonnell Douglas* scheme, Plaintiff must demonstrate that 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) at the time of the adverse action, she was performing her job at a level that met her employer's legitimate expectations; and 4) the position was filled by or remained open to applicants outside the protected class with similar qualifications. *See id.* Once a prima facie case of sex discrimination has been established, the burden then shifts to the employer to demonstrate a legitimate, non-discriminatory reason for its action against Plaintiff. *See id.* If the employer succeeds in doing so, the presumption of discrimination is lifted and Plaintiff is left with the ultimate burden of proving that Westchester has discriminated against her on the basis of sex. *See id.*

■ Although Plaintiff is clearly a member of a protected class and has suffered an adverse employment action by having her contract term reduced, she has failed to establish the other elements required for a prima facie case of sex discrimination. Even taking the evidence in the light most favorable to Plaintiff and accepting her assertions that she was performing her job in a satisfactory manner as true, Plaintiff has failed to produce any evidence that Westchester has hired or attempted to hire anyone to perform her job over the summer, male or female. To the contrary, the evidence is uncontroverted that Westchester has no intentions of hiring anyone to perform Plaintiff's duties during the summer. Moreover, Plaintiff has presented no evidence even remotely suggesting that any of Westchester's actions against her had anything to do with her sex.[4]

■ Even assuming *arguendo* that Plaintiff had established a prima facie case, Westchester has articulated legitimate, non-discriminatory reasons for its action against Plaintiff. *See Brinkley*, 180 F.3d at 607. Westchester has offered evidence that it reduced Plaintiff's contract term to 10 months for business reasons: it had no need for a lower school receptionist when school was not in session, and maintenance on the school buses could be performed immediately prior to the start of school in the fall.

---

4. When asked during her deposition why she believed she had been discriminated against on the basis of her sex, Plaintiff testified as follows:

A. Because I think they feel that there should be a man in this position as director of transportation. They are at other schools.

Q. And are there any other reasons that make you think that they are discriminating against you because of your sex?

A. Other than being able to—as far as maintenance, you know, and that I could talk with a mechanic like a man could. Basically, I mean, that's what I think.

Q. You also say in that same paragraph, "The plaintiff has not received any re-

assurances or kind words from any of the defendants since July 1 of 2000." Is that true?

A. Yes, sir. That is correct. When I came back from my three week sick leave, they never asked my condition. They never asked if I was okay. They just continued treating me the way they had previously.

Q. And that goes to your feeling that you're being discriminated against because of your sex? That they haven't provided—I want to read, "Plaintiff has not received any reassurances or kind words." That helps—you believe that?

A. Yes, sir.

(Pl.'s Dep. at 86–87.)

The court finds that Plaintiff has failed to produce enough evidence under the *McDonnell Douglas* scheme to survive summary judgment. The court will grant Defendants' motion for summary judgment on the Title VII claim against Westchester.

### D. Breach of Contract

Plaintiff's claims for breach of contract focus primarily on Defendants' decision to offer Plaintiff a 10-month contract for the 2001–2002 school year. Plaintiff asserts that Defendants "ignored the terms and conditions" of her contract, "determined that future contracts between the Plaintiff and Defendant would be substantially revised, and would provide a lesser standard than existing contract language between the Plaintiff and the Defendant," and "intentionally revised the terms of Plaintiff's existing contract to damage the Plaintiff." (Compl.¶¶ 55–59.)

■ The court first notes that the contracts at issue—the 2000–2001 contract (for 12 months) and the 2001–2002 contract (for 10 months)—are between Plaintiff and Westchester Academy, Inc., not between Plaintiff and Defendants Cowen and Lejda. (Defs.' Joint Mot. Dismiss, Ex. A ("By signing this contract, you accept employment at Westchester Academy"), Ex. B ("This agreement is made on March 07, 2001 between Brenda Swaim and Westchester Academy.")) Without any evidence that Cowen or Lejda, the headmaster and assistant headmaster, respectively, were parties to Plaintiff's employment contracts, Plaintiff cannot state claims for breach of contract against these administrators. Therefore, the court will grant Defendants' motion for summary judgment as to Plaintiff's claims against the individual defendants.

■ With regard to the remaining claim against Westchester, Plaintiff has failed to allege any breach of the 2000–2001 employment contract that would state a claim. Plaintiff does not allege that she was terminated, denied any part of her salary, or subjected to any other action contrary to the terms of the 2000–2001 contract, which expired on June 30, 2001. Moreover, Plaintiff has failed to establish how Westchester has breached her contract for the following school year (2001–2002), or how the contract offer for the 2001–2002 school year constitutes a breach of the previous year's contract. The 2001–2002 contract offers Plaintiff a position for the "2001–2002 academic year" and specifies that the position is for 10 months at a salary of $27,920.[5] (Defs.' Joint Mot. Dismiss, Ex. B.) Plaintiff signed this contract,[6] and has been working at Westchester pursuant to its terms for the 2001–2002 academic year. Plaintiff makes no allegation that her 2001–2002 term of employment has been cut short, that she has been denied salary or benefits, or that Westchester has violated the terms of this contract in any other way.

■ Plaintiff's allegation that the 2001–2002 contract was a "substantial revision" (presumably, of the 2000–2001 contract) intended to "damage" her also fails to state a claim for breach of contract, as the two contracts at issue are legally separate and distinct agreements. The 2000–2001 contract expired June 30, 2001, and made no mention of continuing or future employ-

---

**5.** This amount is less than Plaintiff's previous salary of $33,500. The decrease, however, is proportional to the two fewer months that Plaintiff was required to work under the 2001–2002 contract (i.e., Plaintiff's monthly salary remained constant).

**6.** The court notes that Plaintiff signed her name on the signature line of the contract yet wrote above her signature, "Signed under protest." (Defs.' Joint Mot. Dismiss Ex. B.)

ment. The 2001–2002 contract, which commenced in the fall of 2001, expired 10 months later.[7] Plaintiff's theory appears to be that Westchester had some duty to offer Plaintiff the same contract terms for the 2001–2002 school year that she enjoyed for the 2000–2001 school year, simply by virtue of the fact that Plaintiff had a long history of employment with Westchester. Unfortunately for Plaintiff, however, there is simply no evidence to support this contention. Nothing in the 2000–2001 contract guaranteed Plaintiff the same contract terms for the following year. In fact, nothing in the 2000–2001 contract guaranteed Plaintiff any employment at all, except from July 1, 2000, to June 30, 2001.

For reasons discussed in parts II(B) and II(C), *supra*, Westchester chose to offer Plaintiff 10 months of employment for the 2001–2002 school year rather than 12 months. Plaintiff accepted the offer, and both parties appear to have performed as agreed under the contract. In light of the above, the court finds no evidence to sustain Plaintiff's claim for breach of contract, and Defendants' motion for summary judgment as to Westchester will be granted.

### E. Tortious Interference with Contract

Plaintiff also alleges that Defendants are liable for tortious interference with contract. To prevail on such a claim, Plaintiff must prove the following elements: 1) a valid contract existed between Plaintiff and a third party, such that Plaintiff held a contractual right against the party; 2) Defendants knew of the contract; 3) Defendants intentionally induced the third party's nonperformance of the contract; 4) without justification; 5) resulting in actual damage to Plaintiff. *See Embree Constr. Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992).

As to Defendant Westchester, the elements of this claim cannot be met because Plaintiff's contract was not with a third party, but with Westchester itself. An allegation that Westchester interfered with its own contract with Plaintiff (and tortiously, at that) would be, of course, a legal absurdity. Therefore, Plaintiff's tortious interference claim against Westchester will be dismissed.

Plaintiff is left with her tortious interference claims against individual defendants Cowen and Lejda. Clearly, these administrators knew that Plaintiff had a valid and enforceable contract with Westchester. However, Plaintiff has failed to adduce any evidence that either Cowen or Lejda induced Westchester not to perform its contract. As discussed in part II(D) above, the court has received no evidence that Westchester failed to perform its obligations under Plaintiff's employment contracts in any way. Consequently, neither Cowen nor Lejda may be held liable for inducing Westchester not to perform when the evidence before the court indicates that Westchester did perform its contract obligations. Westchester had no legal duty to offer Plaintiff another 12–month position for the 2001–2002 school year, or to offer Plaintiff any position at all. As such, even if Cowen or Lejda had "induced" Westchester to offer Plaintiff a 10–month contract instead of a 12–month contract, their doing so could not be characterized as interference with Plaintiff's 2000–2001 contract.

Because Plaintiff has failed to offer sufficient evidence to establish this element of her claim of tortious interference, it is unnecessary for the court to examine any evidence under the remaining elements. Defendants' motion for summary judgment

7. The contract does not specify the exact dates which Plaintiff is to be employed, but does state that it will be for the "academic year."

on the tortious interference claims against the individual defendants will be granted.

### F. Intentional Infliction of Emotional Distress [8]

 Plaintiff has also raised a claim for intentional infliction of emotional distress. To properly state this claim, Plaintiff must allege that Defendants engaged in extreme and outrageous conduct that was intended to cause, and did in fact cause, severe emotional distress. *See Buser v. Southern Food Serv., Inc.*, 73 F.Supp.2d 556, 572 (M.D.N.C.1999). The issue of whether alleged conduct rises to the level of extreme and outrageous conduct is a question of law for the court. *See Lenins v. K–Mart Corp.*, 98 N.C.App. 590, 599, 391 S.E.2d 843, 848 (1990). To qualify, the conduct must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Buser*, 73 F.Supp.2d at 572–73 (quoting *Briggs v. Rosenthal*, 73 N.C.App. 672, 677, 327 S.E.2d 308, 311 (1985)).

 After reviewing the evidence submitted by Plaintiff, the court finds as a matter of law that this evidence is insufficient to state a claim for intentional infliction of emotional distress. Plaintiff's grievances, taking all of her allegations as true, primarily concern work-related criticism leveled at her by her supervisor, Defendant Lejda, which she believes to be unjustified. Defendant Cowen is implicated in this conduct, Plaintiff asserts, because Lejda "was acting according to instructions received from Defendant Cowen," (Compl.¶ 14), and because Cowen offered her the 10–month contract rather than a 12–month contract for the 2001–

2002 school year. Aside from Plaintiff's blanket assertion that Defendant Lejda "harassed" and "intimidated" her, Plaintiff also states that Defendant Lejda acted in a "confrontational" manner toward her; scrutinized her job performance; called Plaintiff's residence repeatedly during Plaintiff's three-week sick leave; wrote memos criticizing Plaintiff's handling of certain job duties; looked into a filing cabinet behind her desk at school without asking her permission; changed her job responsibilities without consulting her; and unfairly accused her of not performing her duties properly.

These actions, while assuredly vexing to Plaintiff, are not so outrageous or extreme that they "go beyond all possible bounds of decency" or are "utterly intolerable in a civilized community." *Buser*, 73 F.Supp.2d at 572–73. Even assuming *arguendo* that Lejda's criticism and scrutiny of Plaintiff was completely unjustified and his decisions to change her job duties were capricious or unfair, his actions would still fall short of the level of conduct required to state a claim for intentional infliction of emotional distress. *See, e.g., Pardasani v. Rack Room Shoes Inc.*, 912 F.Supp. 187, 192 (M.D.N.C.1996) (plaintiff who was given poor performance evaluations to justify unfair denial of promotions, excluded from training and eventually terminated from employment did not state claim); *Patel v. Scotland Memorial Hosp.*, 1995–1 Trade Cas. ¶ 70,971, 1995 WL 319213, at *8–9 (M.D.N.C.1995) (not extreme and outrageous for employer to spread falsehoods about plaintiff's professional ability, allegedly injuring plaintiff's reputation); *Wagoner v. Elkin City Schools' Bd. of Educ.*, 113 N.C.App. 579, 586–87, 440 S.E.2d 119, 123–24 (1994) (not extreme and outrageous

---

8. While Plaintiff's complaint does refer to both intentional and/or negligent infliction of emotional distress (Compl.¶ 53), Plaintiff subsequently clarified to the court that she only

wishes to advance a claim for intentional infliction of emotional distress. (Pl.'s Opp'n to Defs.' Mot. Dismiss at 8.)

for principal to move teacher out of teaching position in violation of contract, place her office in small room in girls' locker room with no air conditioning, assign her different working hours than other teachers, and tell her she had the worst job in the school).

Therefore, because Plaintiff has failed to forecast evidence of extreme and outrageous conduct on the part of Defendants, Plaintiff has not stated a claim for intentional infliction of emotional distress. Defendants' motion to dismiss these claims will be granted.

### G. Remaining Claims

In the Jurisdiction and Venue section of her complaint, Plaintiff lists the previously-discussed causes of action in turn and then asserts a general claim "for punitive damages resulting from libel and slander and for the intentional misconduct of the Defendants, both individually and collectively." (Compl.¶ 1.) At no other place in her complaint does Plaintiff elaborate on this reference to libel and slander or allege any elements of those causes of action. The court finds this solitary and unsupported reference to libel and slander insufficient under the Federal Rules of Civil Procedure to state a claim. Furthermore, having failed to establish any liability for compensatory damages from Defendants, Plaintiff is not entitled to punitive damages.

### III. CONCLUSION

Due to Plaintiff's failure to present sufficient evidence to create a genuine issue of material fact as to her claims for age discrimination, sex discrimination, breach of contract or tortious interference by the individual defendants, the court will grant Defendants' motion for summary judgment

with regard to those claims. All remaining claims will be dismissed.